GEORGE W. McDERMOTT, Respondent, v. RICHARD M. APGAR, Appellant.

No. 306; July 11, 1864.

**Execution.**—The Undivided Share of One Cutting Hay on Shares cannot be levied upon to satisfy the debt of his cosharer.

**Sale—No Change of Possession—Creditors.**—To make a valid sale, as against creditors of the seller, it is necessary under the statute of frauds that there shall be an immediate and continued change of possession. If the buyer allows the seller to have the goods in his keeping after the sale and perform acts as to them and upon them consistent only with ownership, a levy upon them for the seller's debt will be sustained.

This was an action of claim and delivery. The defendant was a constable, and had levied upon forty-five tons of hay, on the farm of one Daniel Griffin, in execution of two judgments against Griffin. The hay, although on Griffin's farm, was the property of McDermott under a verbal agreement, as to which McDermott testified: "Griffin and I had an agreement to cut his field of grass and put it into shocks for a share, one-half; I to furnish machine and men. I received one-half of the hay." Being asked, however, "Did you take any away?" he answered, "No, sir, Mr. Wheaton and the constable took it away from me." The other material facts are disclosed by the court's opinion.

Whitman & Wells for respondent; M. A. Wheaton for appellant.

SAWYER, J.—Under the agreement to cut the hay on shares, plaintiff became a tenant in common with Griffin to the

extent of one-half. Upon this point the rights of the parties are governed by the principles determined in Bours v. Webster, 6 Cal. 661, Visher v. Webster, 13 Cal. 58, and Bernal v. Hovious, 17 Cal. 545, 79 Am. Dec. 147. This undivided half was not subject to seizure and sale on execution against Griffin.

The sale of Griffin's half to the plaintiff did not take place till after the hay was cut and thereby severed from the realty. To make a valid sale as against creditors, it was necessary under the statute of frauds that there should be an immediate and continued change of possession. After the hay was cut, it was gathered and pressed by three or four men hired and paid by plaintiff, one of whom was Griffin. The other men in gathering and pressing the hay, worked under Griffin's immediate direction—Griffin acting as a sort of overseer for plaintiff. The hay was cut, pressed and stacked on Griffin's land—and pressed in Griffin's press. The hands were boarded on the farm by Griffin. Sometimes plaintiff's horse and sometimes Griffin's was used on the press. The plaintiff was at work cutting grain in another place, and was only occasionally at the place where Griffin and the hands were engaged in pressing the hay. At the time the levy was made by defendant under an execution against Griffin, Griffin was actually engaged superintending the pressing of the hay, in his own press, on his own land, and working his own horse. The plaintiff only cut the hay with the machine and left it in the swarth upon the field, after which it was gathered and pressed by the hands who worked under the immediate superintendence of Griffin. These facts clearly appear from the testimony in which there is not the slightest conflict, and most of the testimony is from the plaintiff himself.

Upon this state of facts there was no such delivery as would take the case out of the statute of frauds. To all appearance Griffin was in the possession and controlling it. It was upon his land. He boarded and superintended the hands who were gathering and pressing it, using his own horse and press in the work. Apparently he controlled the hay and sustained to it the usual relation of owner to property. The sale of his half to plaintiff was therefore void as to the creditors of Grif-

fin, and was subject to seizure and sale on execution against him. In this respect the verdict was contrary to the evidence. The judgment is reversed and a new trial ordered.

We concur: Sanderson, C. J.; Currey, J.; Shafter, J.